| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br>Law Offices of Andy Winchell<br>332 Springfield Avenue, Suite 203<br>Summit, New Jersey 07901<br>Telephone No. (973) 457-4710<br>andy@winchlaw.com<br>By: Andy Winchell [AW-6590]<br>Attorney for Plaintiff Kimberly Cartelli-Martinez | |
| Kimberly Cartelli-Martinez aka Kimberly Cartelli-Martin,<br><br>           Plaintiff<br><br> v.<br><br>HSBC Bank Nevada, N.A.; Law Offices of Joe Pezzuto LCC; CACH of NJ, LLC; Fein, Such, Kahn & Shepard, P.C.<br><br>           Defendants | COMPLAINT<br><br>JURY TRIAL DEMANDED |

# COMPLAINT OF THE DEBTOR SEEKING DAMAGES FOR VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT AND THE NEW JERSEY CONSUMER FRAUD ACT

### Introduction

### PRELIMINARY STATEMENT

1.      This is an action brought by the Plaintiff Kimberly Cartelli-Martinez (hereinafter the "Plaintiff") seeking redress for the unlawful and deceptive practices committed by the Defendants in connection with their efforts to collect a disputed debt. The Defendants' conduct includes: (a) continuing to attempt to collect a debt that the consumer disputed; (b) failing to provide documentation of the debt to the Plaintiff when the Plaintiff disputed the validity of the debt; (c) continuing to make false, fraudulent, misleading statements by continuing to collect a unlawful

debt; (d) using attorneys who are not licensed in New Jersey to contact the Plaintiff to try to coerce payment of a disputed and unlawful debt; (e) misrepresenting that the alleged debt would be canceled; (e) selling the disputed and unlawful debt to a debt buyer; and (f) ultimately bringing an action in state court to collect a disputed and unlawful debt in an amount vastly more than the Plaintiff ever would have owed. The Plaintiff seeks monetary, declaratory and injunctive relief based on violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. and the New Jersey Consumer Fraud Act, N.J.S.A 56:8-1 et seq.

**Preliminary Statement Regarding the Fair Debt Collection Practices Act**

2.      The Fair Debt Collection Practices Act ("FDCPA") is a comprehensive statute which prohibits a catalog of activities in connection with the collection of debts by third parties. See 15 U.S.C. § 1692 et seq. The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. See 15 U.S.C. § 1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by consumers, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices. See id.

3.      In particular, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action. The substantive heart of the FDCPA lies in three broad prohibitions. First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The FDCPA is designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, and broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements in connection with the collection of a debt.

4.      In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692a. Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers. See 15 U.S.C. § 1692b.

5.      Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors. The express purpose of the FDCPA are to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e.

6.      The FDCPA is a strict liability statute and provides for both actual and statutory damages upon the showing of a single violation. See Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62-3, (2d Cir. 1993); see also Taylor v. Perrin, Landry, de Launay & Durand, 103 F.3d 1232 (5th Cir. 1997). "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." Russell v. Equifax A.R.S., 74 F.3d 30 (2d Cir. 1996); see also Gearing v. Check Brokerage Corp., 233 F.3d 469 (7th Cir. 2000) (holding unintentional misrepresentation of debt collector's legal status violated the FDCPA); Clomon v. Jackson, 988 F.2d 1314 (2d Cir. 1993).

7.      The FDCPA is a remedial statute and therefore must be construed liberally in favor of the debtor. Sprinkle v. SB&C Ltd., 472 F. Supp. 1235 (W.D. Wash. 2006). The remedial nature of the FDCPA requires that courts interpret it liberally. Clark v. Capital Credit & Collection Services, Inc., 460 F.3d 1162 (9th Cir. 2006). "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C. § 1601 et seq., is a remedial statute, it should be construed liberally in favor of the consumer." Johnson v. Riddle, 305 F.3d 1107 (10th Cir. 2002).

8.      The FDCPA applies to attorneys regularly engaged in consumer debt-collection litigation. See Heintz v. Jenkins, 514 U.S. 291 (1995). The FDCPA creates no exception for attorneys regularly engaged in consumer debt-collection litigation on behalf of a creditor client. See id. "Attorneys who regularly engage in debt collection or debt collection litigation are

3

covered by the FDCPA, and their litigation activities must comply with the requirements of that Act." Piper v. Portnoff Law Associates, 396 F.3d 227, 232 (3d Cir. 2005) (Emphasis added).

9. To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading representations or means in connection with the collection of any debt and sets forth a non-exhaustive list of certain per se violations of false and deceptive collection conduct. See 15 U.S.C. § 1692e(1)–(16).

**Preliminary Statement Regarding the New Jersey Consumer Fraud Act**

10. The Consumer Fraud Act (hereinafter referred to as the "CFA") was enacted to "protect the consumer against imposition and loss as a result of fraud and fraudulent practices by persons engaged in the sale of goods and services." Fenwick v. Kay Am. Jeep, Inc., 136 N.J. Super. 114, 117 (App. Div.), rev'd on other grounds, 72 N.J. 372 (1977); Marascio v. Campanella, 298 N.J. Super. 491, 500 (App. Div. 1997). The purposes of the CFA are threefold: (1) to compensate the victim for his or her actual loss, (2) to punish the wrongdoer through the award of treble damages, and (3) "to attract competent counsel to counteract the community scourge of fraud by providing an incentive for an attorney to take a case involving a minor loss to the individual". Lettenmaier v. Lube Connection, Inc., 162 N.J. 134, 139 (1999).

11. The CFA is to be applied broadly in light of the statute's remedial purpose. See Lemelledo v. Beneficial Management Corp. of Am., 150 N.J. 255, 264 (1997); Blatterfein v. Larken Associates, 323 N.J. Super. 167, 178 (App. Div. 1999). Moreover, the CFA is to be liberally construed in favor of the consumer. See Lettenmaier v. Lube Connection, Inc., 162 N.J. at 139. "The legislative concern was the victimized consumer, not the occasionally victimized seller." Channel Companies, Inc. v. Britton, 167 N.J. Super. 417, 418 (App. Div. 1979). Nonetheless, "[t]he consumer fraud statute is aimed at promoting truth and fair dealing in the market place." Feinberg v. Red Bank Volvo, Inc., 331 N.J. Super. 506, 512 (App. Div. 2000).

12. "CFA claims brought by consumers as private plaintiffs can be divided, for analytical purposes, into three categories. Broadly defined, the categories are claims involving affirmative acts, claims asserting knowing omissions, and claims based on regulatory violations." Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 556 (2009) (citing Cox v. Sears, Roebuck & Co., 138 N.J. 2, 17 (1994)). See also N.J.S.A. § 56:8–2. "[T]he proofs required will vary depending

4

upon the category into which any particular claim falls." Bosland, supra, 197 N.J. at 556. "[I]f a claimed CFA violation is the result of a defendant's affirmative act, 'intent is not an essential element.'" Ibid. (quoting *Cox,* supra, 138 N.J. at 17–18).

13.     Regardless of the theory under which a CFA claim proceeds, the consumer must "demonstrate that he or she has suffered an 'ascertainable loss.'" Bosland, supra, 197 N.J. at 555 (quoting Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 472–73 (1988)); N.J.S.A. § 56:8–19. An ascertainable loss is "a definite, certain and measurable loss, rather than one that is merely theoretical." Bosland, supra, 197 N.J. at 558 (citing Thiedemann v. Mercedes-Benz USA, L.L.C., 183 N.J. 234, 248 (2005)). "In addition, the CFA requires a consumer to prove that the loss is attributable to the conduct that the CFA seeks to punish by including a limitation expressed as a causal link." Bosland, supra, 197 N.J. at 555 (citing Meshinsky, supra, 110 N.J. at 472–73). Plaintiffs "[have] the burden of showing the connection between the [Defendants'] improper practice and the ascertainable loss." Hoffman v. Asseenontv. Com, Inc., 404 N.J. Super. 415, 428 (App. Div. 2009) (citing Dabush v. Mercedes Benz, USA, LLC, 378 N.J. Super. 105, 116 (App. Div.), certif. denied, 185 N.J. 265 (2005)).

## JURISDICTION

14.     Jurisdiction over this matter is provided pursuant to Section 1692 of Title 15 of the United States Code; thus, federal subject matter jurisdiction is properly founded upon Section 1331 of Title 28 of the United States Code.

15.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) of the United States Code because a substantial part of the events giving rise to Plaintiff's claims occurred within this federal judicial district and because Defendants regularly transact business within this federal district by attempting to collect debts from consumers who reside in this district.

16.     This case is brought within one year of the violations in compliance with the statute of limitations at 15 U.S.C. § 1692k(d).

## PARTIES

17.     The Plaintiff is a married woman who lives in Denville, New Jersey with her husband and three children.

18. On information and belief Defendant HSBC Bank Nevada, N.A. ("HSBC") is a corporation organized under the laws of the State of Nevada.

19. On information and belief Defendant Law Offices of Joe Pezzuto LLC (the "Pezzuto Firm") is a debt collection law firm based in Phoenix, Arizona.

20. On information and belief Defendant CACH of NJ, LLC ("CACH") is a debt buying and debt collecting corporation organized under the laws of the State of New Jersey.

21. On information and belief Defendant Fein, Such, Kahn & Shepard, P.C. (the "Fein Firm") is a debt collection law firm organized under the laws of the State of New Jersey.

22. For the purposes of the Fair Debt Collection Practices Act, each of the Defendants is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6) based upon the facts asserted below.

## FACTUAL ALLEGATIONS

23. In February of 2007, the Plaintiff purchased bedroom furniture for her son's bedroom from a Levitz ("Levitz") furniture store for approximately $2,000. She paid for the purchase through a Levitz charge card.

24. A few months later, in May of 2007, the furniture arrived at the Plaintiff's home. Much of the furniture was damaged and was not fit for use. The Plaintiff contacted Levitz immediately to inquire about either repairing the furniture or returning the damaged furniture and obtaining a replacement set.

25. Approximately nine months later, on November 23, 2007, Levitz finally sent a service representative to the Plaintiff's home to inspect the damaged furniture. The service representative agreed that the furniture was damaged beyond repair. The service representative informed the Plaintiff that Levitz would be contacting her soon about replacing the furniture.

26. Four days later, on November 27, 2007, Levitz filed its chapter 11 bankruptcy case.

27. For months following Levitz' bankruptcy filing, the Plaintiff attempted to resolve the matter and obtain a new set of furniture. The Plaintiff repeatedly contacted Levitz and inquired about the status of her order. Levitz never resolved the issue and never delivered replacement furniture.

28.     Ultimately, Levitz was liquidated. Because Levitz never fulfilled its obligation to deliver functional furniture, the Plaintiff never paid Levitz the purchase price.

29.     Approximately two years later, in November 2009, the Plaintiff became aware that HSBC had taken over certain aspects of Levitz' operations. The Plaintiff therefore attempted to resolve the matter with HSBC. Over the course of the year, from November 2009 to nearly the end of 2010, the Plaintiff informed HSBC of the foregoing transaction history both verbally and in writing numerous times. HSBC simply refused to acknowledge that Levitz had not fulfilled the terms of its agreement with the Plaintiff and therefore Plaintiff owed no debt to Levitz or HSBC.

30.     During that process, starting in March 2010, HSBC began reporting to credit bureaus that the Plaintiff owed money to HSBC and began needlessly damaging the Plaintiff's credit rating.

31.     On or about February 25, 2011, representatives of the Pezzuto Firm began calling the Plaintiff. The Pezzuto Firm never provided the Plaintiff with the disclosures mandated by 15 U.S.C. § 1692g.

32.     Nevertheless, on March 31, 2011, counsel to the Plaintiff contacted the Pezzuto Firm to discuss the matter. Plaintiff's counsel had an extensive conversation with the representative from the Pezzuto Firm who answered the call. Plaintiff's counsel explained what had happened, that the Plaintiff did not owe the subject debt, that Plaintiff had disputed the debt because of the damaged furniture, and that neither HSBC nor the Pezzuto Firm had any right to recover any debt from the Plaintiff. The representative from the Pezzuto Firm acknowledged that the Pezzuto Firm's records showed that the debt was disputed. The representative indicated that the Pezzuto Firm would cancel and close out the debt account.

33.     The Plaintiff heard nothing further until a few months later when Plaintiff's counsel received another call from the Pezzuto Firm. Plaintiff's counsel and the Pezzuto Firm ultimately spoke again on June 1, 2011 when a person who identified herself as Michelle Craig called Plaintiff's counsel. Plaintiff's counsel explained the story again. Plaintiff's counsel explained clearly and unequivocally that neither the Pezzuto Firm nor its clients had any right to collect any amounts from the Plaintiff and that the Pezzuto Firm already had agreed not pursue

the Plaintiff any further. Ms. Craig again noted that the account was marked as disputed. Upon inquiry from Plaintiff's counsel, Ms. Craig confirmed that the Pezzuto Firm does not have any attorneys who are licensed in New Jersey.

34.   Roughly two weeks later, on June 17, 2011, the Plaintiff received an initial communication (the "Initial Communication") from the Fein Firm on behalf of CACH. The Initial Communication properly gave the Plaintiff an opportunity to dispute the alleged debt as required by 15 U.S.C. 1692g.

35.   The Plaintiff responded to the Initial Communication with a letter dated June 27, 2011 disputing the alleged debt, informing the Fein Firm that she did not owe the debt in question and stating that any further collection activities would be in violation of the FDCPA and applicable state laws.

36.   CACH and the Fein Firm responded by filing a complaint (the "Complaint") in New Jersey Superior Court, Special Civil Part for Morris County for $6,075.24, roughly three times what the amount of the original debt would have been if it had ever existed. None of the allegations in the Complaint are accurate. The Plaintiff has been forced to spend money on attorney's fees to defend against a completely bogus lawsuit based upon verifiably false information.

## FIRST CLAIM FOR RELIEF
### (Violations of the Fair Debt Collection Practices Act)

37.   The allegations in paragraphs 1 through 36 of this complaint are realleged and incorporated herein by this reference.

38.   The foregoing acts and omissions by the Defendants constitute violations of the FDCPA. The Defendants' violations include but are not limited to the following:

39.   All Defendants violated 15 U.S.C. § 1692d by harassing, oppressing or abusing the Plaintiff in connection with the collection of an alleged debt.

40.   All Defendants violated 15 U.S.C. § 1692e by using false, misleading and deceptive means in connection with the collection of an alleged debt;

41.   All Defendants violated 15 U.S.C. § 1692e(2) by falsely representing the character, amount or legal status of an alleged debt;

42. Defendant Pezzuto violated 15 U.S.C. § 1692e(11) of the FDCPA by failing to disclose that Defendant Pezzuto is a debt collector is attempting to collect a debt and that any information obtained will be used for that purpose;

43. All Defendants violated 15 U.S.C. § 1692f of the FDCPA by using unfair and deceptive means to collect a debt;

44. All Defendants violated 15 U.S.C. § 1692f(1) by attempting to collect an amount not expressly authorized by an agreement with Plaintiff and not permitted by law;

45. Defendants Pezutto Firm and HSBC violated § 1692g of the FDCPA by failing to, within five days after the initial contact with Plaintiff in connection with the collection of the alleged debt, send written notice containing any of the following: the amount of the debt, the name of the creditor to whom the debt is owed, a statement that unless the consumer disputes the validity of the debt within 30 days of the initial communication the debt will be assumed to be valid, a statement that if the consumer disputes the debt in writing within the 30 day period the debt collector is required to verify the debt, a statement that, upon written request within the 30 day period, the debt collector will provide the consumer with the name and address of the original creditor; and

46. Defendants Fein Firm and CACH violated § 1692g of the FDCPA by failing to verify the alleged debt upon written notice of dispute by the Plaintiff; and

47. All Defendants violated the FDCPA by being deceptive and failing to comply with the provisions of the FDCPA.

48. As a result of the Defendants' violations of the FDCPA, the Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 per violation pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from the Defendants herein.

**SECOND CLAIM FOR RELIEF**
**(Violation of the New Jersey Consumer Fraud Act)**

49. The allegations in paragraphs 1 through 48 of this complaint are realleged and incorporated herein by this reference.

50. The Plaintiff is a "consumer," which is defined under N.J.S.A. § 56:12–15 as "any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes."

51. Each Defendant is a "person," which is defined under N.J.S.A. § 56:8–1(d) as "any natural person or his legal representative, partnership, corporation, company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or <u>cestuis que trustent</u> thereof."

52. The furniture that the Plaintiff purchased is "merchandise," which is defined under N.J.S.A. § 56:8–1(c) to "include any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale."

53. The Defendants engaged in the community scourge of fraud.

54. In engaging in the above conduct, the Defendants committed an unconscionable commercial practice, deception, fraud, false pretense, false promise, or misrepresentation in connection with collecting a debt arising from the sale of merchandise in violation of N.J.S.A. § 56:8–2 by indicating that the Plaintiff owed a debt to any of the Defendants.

55. Defendants knowingly concealed, suppressed or omitted material facts with the intent that Plaintiff rely on such suppression, concealment, or omission to Plaintiff's detriment in violation of N.J.S.A. § 56:8–2 by indicating that the Plaintiff owed a debt to any of the Defendants.

56. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff has suffered an ascertainable loss of money or property by retaining counsel to defend herself against the allegations.

57. As a direct and proximate result of the Defendants' unlawful conduct, the Plaintiff demands judgment against the Defendants, jointly and severally for actual damages, punitive damages, threefold damages, attorney's fees and costs under N.J.S.A. § 56:8–19.

**WHEREFORE,** the Plaintiff having set forth claims for relief against the Defendants respectfully prays of the Court as follows:

      a.      That the Plaintiff be awarded and recover actual, statutory and punitive damages in an amount to be determined by this Court;

      b.      That the Plaintiff have and recover reasonable legal fees in an amount to be determined by this Court;

      c.      That the Plaintiff recover all reasonable costs and expenses in this case in an amount to be determined by this Court;

      d.      That this Court order the Defendants to pay, jointly and severally, additional actual damages and statutory damages in a sum to be determined by the Court for violation of N.J.S.A. § 56:8–1, et seq.;

      e.      That this Court order the Defendants to pay, jointly and severally, threefold the damages pursuant to the mandatory requirements of N.J.S.A. § 56:8–19;

      f.      That the Plaintiff have and recover against the Defendants, jointly and severally, all pre-judgment interest;

      g.      That this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of orders entered in this case;

      h.      That the Plaintiff have such other and further relief as to the Court may seem just and proper.

Dated this the 5th day of August, 2011.


/s/ Andy Winchell
Law Offices of Andy Winchell
332 Springfield Avenue, Suite 203
Summit, New Jersey 07901
973-457-4710
andy@winchlaw.com
Attorney for the Plaintiff